IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

CARLOS RODRIGUEZ NEWELL,

    Petitioner,

v.

WARDEN J. FIKES,

    Respondent.

CIVIL ACTION NO.: 2:22-cv-53

### ORDER AND REPORT AND RECOMMENDATION

Petitioner Carlos Newell ("Newell"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Newell filed a Response. Docs. 6, 8. Newell also filed a Motion to Amend to Class Action, to which Respondent filed a Response. Docs. 9, 10. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion, **DENY** Newell's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Newell leave to appeal *in forma pauperis*. In addition, I **DENY** Newell's Motion to Amend.

### BACKGROUND

Newell was convicted in the District Court of the Northern District of Georgia of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and was sentenced to 180 months in prison. Doc. 6-1 at 6. Newell has a projected release date of May 14, 2029, via good conduct time release. Id. at 4.

## DISCUSSION

In his Petition, Newell makes various arguments concerning the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") system, which is utilized by the Bureau of Prisons ("BOP").  First, Newell contends PATTERN has had to be adjusted several times after misapplications of Congress' "clear intent for offenders to be able to reduce their recidivism risk level substantial[l]y by 'participating' in evidence based recidivism risk reduction programs and remaining disciplinary free."  Doc. 1 at 6.  Newell also contends the PATTERN system is flawed because several categories do not allow an offender's score to change enough to reduce the risk level by more than one level.  Newell further contends the PATTERN system is racially biased because certain racial groups have higher criminal history scores than others.  Id. Newell asserts he is unable to participate in most evidence-based reduction programs due to restrictions in place to prevent the spread of COVID-19.  Id. at 7.  Newell asks the Court to compel the BOP to reduce his recidivism risk level because he has maintained employment for three years, he has been in programs continuously, and he has remained disciplinary-free.  He also asks for his earned time credits to be calculated under a "low level" and to be awarded 15 days for every 30 days he has participated in evidence-based recidivism reduction ("EBRR") programs.  Id.

Respondent states this Court lacks jurisdiction to review the BOP's recidivism risk level determination.  Doc. 6 at 1.  Alternatively, Respondent asserts Newell has no liberty interest in receiving a certain recidivism score and fails to show he is similarly situated with prisoners receiving more favorable treatment.  Respondent also asserts the BOP properly determined it could not apply earned time credits to Newell's projected release date based on his recidivism level.  Id. at 1–2, 3.

At base, Newell complains about the BOP's evaluation of his risk recidivism category, which, in turn, impacts the application of earned time credits under the First Step Act of 2018 ("FSA"). Newell crafts various arguments in an attempt to have the Court review and set aside the BOP's risk level determination. As explained below, Newell's arguments are unavailing. Among other things, this Court is precluded by statute from reviewing the BOP's risk level determination.

**I.      The BOP Has Full Discretion to Determine Newell's Recidivism Risk Level, and the Court is Precluded From Reviewing That Determination**

Respondent argues Newell's requests to have the BOP reduce his recidivism risk level to low and award him 15 days' credit for every 30 days' participation in EBRR programs are essentially a request to have the BOP determine he is eligible for early release under 18 U.S.C. § 3624(g). Id. at 5–6. Respondent states judicial review of this determination is barred by statute and, accordingly, this Court lacks jurisdiction to review the BOP's determination on Newell's eligibility for early release based on time credits. Id. at 6.

Newell responds he is asking the Court to review the PATTERN system "for fairness, accuracy, and consistency . . . ." Doc. 8 at 2. Newell claims he has been attempting to reduce his classification level since November 2019 but his recidivism risk level has not been reduced. Id. (citing 18 U.S.C. § 3632(a)(5)).

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action. See 5 U.S.C. § 703. However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626. The Eleventh Circuit Court of Appeals has explained § 3625 expressly precludes judicial review of agency adjudicative decisions but not rulemaking decisions, and courts lack

3

jurisdiction as a result of § 3625 even in a § 2241 habeas action, unless the petitioner is challenging the underlying rules and regulations that establish the criteria governing the BOP's decision-making process.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."). Where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution.  See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), *report and recommendation adopted*, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

      The BOP's determination of whether an inmate is eligible to earn FSA time credits and eligible to apply those credits toward his sentence is made under 18 U.S.C. § 3624(g).  A prisoner is eligible for prerelease custody or supervised release if he "has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the 'System') in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment[.]"  18 U.S.C. § 3624(g)(1)(A).  The BOP's determination regarding Newell's requests for a reduction of his recidivism risk level and whether to award 15 days'

4

credit for every 30 days of participation on EBRR programs falls under the purview of § 3625. The BOP's determination on this matter is an adjudicative, discretionary determination and not a rulemaking one. "And that decision is not subject to judicial review." Cook, 208 F.3d at 1319. As a result, the Court should **GRANT** this portion of the Motion to Dismiss and **DISMISS** this portion of Newell's Petition.

## II.  Newell Has No Protected Liberty Interest in Early Release

Respondent notes Newell has no due process liberty interest in early release. Doc. 6 at 9 (citing cases). Specifically, Respondent states the Attorney General has discretion under the FSA to assess recidivism risk levels and to determine when a prisoner is a minimum or low recidivism risk. In addition, when the BOP calculates a prisoner's PATTERN score and recidivism risk level, no protected liberty interest is implicated. Id. at 10. Newell counters an eligible inmate can reduce the length of his sentence by earning and applying earned credits under the FSA and he is an eligible offender. Doc. 8 at 3.

"In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment." Cook, 208 F.3d at 1322 (citing Am. Mfrs. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)). "A prisoner has 'no constitutional or inherent right' in being released before the completion of a valid sentence." Id. (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). "More particularly, if the relevant statute 'places no substantive limitations on official discretion' in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated." Id. (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991) (concluding no liberty interest arose from possibility of discretionary grant of incentive good time)); see also Barrion v. Dugger, No. 6:20-

cv-41, 2022 WL 1548190 (S.D. Ga. Apr. 22, 2022) (finding prisoner "has no liberty interest in early release[]"), *adopted by* 2022 WL 1538753 (S.D. Ga. May 16, 2022).

The FSA gives the Attorney General the authority to develop "a risk and needs assessment system" used to, among other things, "determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism[,]" "assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner[,]" and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624[.]"  18 U.S.C. § 3632(a)(1)–(2), (7).  To be eligible for FSA early release, a prisoner must "[have] shown through the periodic risk reassessments a demonstrated recidivism risk reduction or [have] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment." 18 U.S.C. § 3624(g)(1)(B); see 28 C.F.R. § 523.44(b).  The FSA gives the Attorney General discretion in assessing each prisoner's recidivism risk level and in determining when a prisoner is minimum or low recidivism risk.  Thus, no constitutionally protected liberty interest is implicated when the BOP calculates a prisoner's PATTERN score and resulting recidivism risk level.  Prince v. Fikes, No. 21-cv-643, 2021 WL 2942311, at *3 (D. Minn. June 16, 2021) (rejecting argument petitioner entitled to time credits claim credit because federal prisoners have no right to particular security or custody classification or eligibility for rehabilitative programs), *adopted by* 2021 WL 2936656 (D. Minn. July 13, 2021).

Because the BOP has—within its discretion—scored Newell at a high recidivism risk level (which Newell recognizes, doc. 1), he is ineligible to receive time credits toward pre-release custody or supervised release.  Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DISMISS** this portion of Newell's Petition.

6

### III. Newell's Equal Protection Claim

Respondent states Newell provides no support for his claim African American and Hispanic inmates are scored differently in the criminal history points category in the PATTERN system than similarly situated inmates of other races and ethnicities. Doc. 6 at 11. Respondent also states a review of the PATTERN form for male inmates reveals all male inmates, regardless of race or ethnicity, are scored based on their criminal history points.

Newell asserts the PATTERN recidivism risk assessment worksheet creates a disparity based on race based on the four categories listed: (1) violent offense; (2) criminal history; (3) education score; and (4) incident reports. Doc. 8 at 4. Newell states inmates with possession of a firearm convictions are given five points, even though "courts ha[ve] decided [this] offense is not a violent crime[,]" with 80 percent of inmates in this category being African American or Hispanic. Id. As for criminal history and education scores, Newell contends African American and Hispanic inmates are at a disadvantage against white inmates because African American and Hispanic inmates face racial disparities throughout the entire criminal justice system because these groups are arrested more than white persons and do not have the same educational opportunities as white persons. Id. Finally, Newell states African American and Hispanic inmates have a greater risk of being racially profiled by prison authorities, beginning with correctional officers who initiate incident reports. Id. at 4–5.

To state a valid equal protection claim, a prisoner must show: (1) he has been treated differently from other "similarly situated" inmates, and (2) this discriminatory treatment is based upon a constitutionally impermissible basis, such as race or religion. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). Additionally, a prisoner must demonstrate the respondent was motivated by a discriminatory intent or purpose. See Parks v. Warner Robins, 43 F.3d 609, 616

(11th Cir. 1995) (requiring "proof of discriminatory intent or purpose" to show an equal protection clause violation); Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring a plaintiff to demonstrate the challenged action was motivated by an intent to discriminate to establish an equal protection violation).

Newell makes no compelling or reasonable argument Respondent or the BOP discriminated against him, he is similarly situated with any alleged comparator, or Respondent acted with any alleged intent or purpose. Holmes v. Watts, 2:15-cv-155, 2016 WL 205401, at *4 (S.D. Ga. Jan. 15, 2016) ("A prisoner asserting an equal protection claim must demonstrate that he is similarly situated with other prisoners who received more favorable treatment and that his discriminatory treatment was based upon some constitutionally protected interest.").[1] In fact, Newell fails to allege similarly situated white inmates in the BOP's custody have better or more advantageous PATTERN scores than their African American or Hispanic counterparts. Stated differently, Newell offers no evidence inmates of different races or ethnicities within the BOP's custody have PATTERN scores which differ based on anything other than race-neutral reasons, i.e., the use of criminal history points. Rather, Newell offers little more than generalized allegations in support of any contention race plays any role in the assignment of PATTERN scores, which is an insufficient showing for an equal protection claim. See Doc. 1. Newell makes sweeping, generalized allegations concerning the criminal justice system in this country and vague statements about racial and ethnic disparities throughout that system. Id. Again, such allegations cannot support an equal protection claim. See, e.g., Ramirez v. Johns, Civil Action No.: 5:18-cv-57, 2019 WL 2296785, at *6 (S.D. Ga. Apr. 30, 2019) (finding conclusory

---

[1] To the extent Newell wishes for the seven other inmates he seeks to add in a class action to be comparators, doc. 9, such a request is without merit. There is nothing before the Court—other than Newell's conclusory statements—suggesting he has been subjected to unequal treatment or is a member of a protected class.

statements in support of alleged equal protection violations not sufficient to show prisoner similarly situated to other prisoners who were treated more favorably or the government actor intentionally discriminated against the complaining prisoner on a constitutionally impermissible basis, such as race), *adopted by* 2019 WL 2295939 (S.D. Ga. May 28, 2019).  Thus, the Court should **GRANT** this portion of Respondent's Motion and **DENY** Newell's equal protection claim.

IV.     **Motion to Amend to Class Action, Doc. 9**

Newell seeks to have this Court amend his cause of action as a class action.  He contends several other inmates are in the same situation he is in and has included affidavits or declarations from several fellow inmates.  Id.

Respondent opposes this Motion, stating Newell failed to attach a proposed amended petition or describe the substance of any proposed amendment.  Doc. 10 at 1.  Respondent states Newell has filed statements from other inmates without a showing of how those inmates have been injured, what their recidivism levels are, or if they exhausted their administrative remedies.  Id.  In addition, Respondent notes a pro se party, such as Newell, can only represent himself, not any other inmates, and the other inmates are required to file separate petitions and pay their own filing fees.  Id. at 1–2.

"An individual unquestionably has the right to litigate his own claims in federal court, before both the district and appellate courts . . . .  The right to litigate for oneself, however, does not create a coordinate right to litigate for others."  Walker v. Brown, No. CV 112-105, 2012 WL 4049438, at *1 (S.D. Ga. Aug. 14, 2012) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding a pro se prisoner may not litigate the interests of other prisoners in class action)), *adopted by* 2012 WL 4052038 (S.D. Ga. Sept. 13, 2012).  Newell's desire to amend his

cause of action as a class action fails.  He cannot litigate other inmates' interests.  In addition, Newell cannot add any other person as a named petitioner.  The Prison Litigation Reform Act of 1996 ("PLRA") provides a prisoner bringing a civil action *in forma pauperis* must pay the full filing fee.  See 28 U.S.C. § 1915(b).  The Eleventh Circuit Court of Appeals has determined the language of the PLRA requires each prisoner to pay the full amount of the filing fee or face dismissal of his case.  Hubbard v. Haley, 262 F.3d 1194, 1197–98 (11th Cir. 2001).  None of the other seven inmates wishing to bring a habeas action have moved to proceed *in forma pauperis* or paid the applicable filing fee, and none of the other inmates filed his own petition.  Thus, the Court **DENIES** Newell's Motion.

V.      **Leave to Appeal *in Forma Pauperis***

The Court should also deny Newell leave to appeal *in forma pauperis*.  Though Newell has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "without arguable merit either in law or

fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Newell's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Newell *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion and **DENY** Newell's Petition. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Newell leave to appeal *in forma pauperis*. I **DENY** Newell's Motion to Amend.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the

specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 21st day of February, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA